PETER N. DODD, administrator d. b. n. of BARKLEY WILSON, deceased,

*vs.*

WILLIAM WILSON.

*Sussex, Mch. T. 1872.*

Judgment was entered in 1852 on the bond of a principal debtor and four sureties. In 1860 the goods of the principal and one surety having been sold, and those of the three other sureties being under execution, the latter executed a new bond to the creditors for the amount due, and in

1864 one of the three obligors in the last bond having died, his administratrix paid the debt. In 1869 the bill was filed to recover from the principal debtor the amount so paid ; *Held*, —

1. That the substituted bond was, in equity, a discharge of the original judgment only so far as concerned the creditor, leaving it in force as against the principal for the protection of the sureties or any of them, subsequently paying the debt.

2. One surety having paid the debt, is entitled to subrogation to the original rights of the creditor under the first bond against the principal debtor.

3 In such a case the creditor, having already assigned the judgment to the administratrix of the surety who had paid, is not a necessary party.

4. Relief may be given by enjoining the principal from setting up the second judgment as a payment, or extinguishment of the original judgment in an action of *scire facias* upon the latter brought by the administrator of the surety who had paid and taken an assignment of it.

A court of equity will always reach, by a direct decree, what otherwise would be accomplished by a circuity of proceedings.

A court of equity had full power, when necessary for the protection of the equitable rights of a party, to restrain his adversary as well from setting up an inequitable defense as from prosecuting an inequitable action.

The limitation of three years will be applied in equity to a claim for relief by a decree for the repayment of money paid for the use of the defendant, by analogy to the statutory period of limitation against simple contract debts, in actions at law.

BILL IN EQUITY BY A SURETY.—This was a bill filed for re-imbursement to a surety of money paid for his principal under the following circumstances :—William W. Wilson, the defendant's intestate, together with Barkley Wilson, Josiah Marvel, James Wilson and Silas Reynolds, on the 2d of March 1852, executed their judgment bond to the Farmers' Bank at Georgetown for $670. Judgment was entered in the Superior Court, execution issued and levies made upon the goods of all the obligors and finally, under a *vend. exp.* returnable to the Oct. Term 1860, the goods of William W. Wilson and James Wilson were sold, but the proceeds were applied to prior executions. On the 2d of Sept. 1860, three of the obligors in the original bond, viz. Barkley Townsend Wilson, Josiah Marvel and

Silas Reynolds, gave to the Bank a new bond for the sum of $800.00 covering the original debt, and which bond the Bank accepted in satisfaction of the original one, the interest in arrear. In the bond last taken, William W. Wilson and James Wilson did not join. Judgment was entered upon the last mentioned bond and execution was issued and levied upon the goods of Barkley Wilson and Silas Reynolds, the other obligor, Josiah Marvel, having meanwhile died. Pending this execution, Barkley Wilson died, and thereupon, his administratrix, Louisa A. Wilson, on the 16th of August, 1864, paid the debt, amounting, with interest and costs, to $1046.46. The bill charges that in the original bond for $670.00, William W. Wilson, the defendant, was the principal debtor, and the other obligors were sureties ; and that the payment by the administratrix under the execution issued upon the last bond, was in discharge of William W. Wilson's indebtedness to the bank, that being the real consideration of both bonds. The prayer is that William W. Wilson may re-imburse to Barkley Wilson's estate the amount paid.

The answer denies that William W. Wilson was principal in the original bond, and charges, on the contrary, that Barkley Wilson, James Wilson and Josiah Marvel were the principals in that bond, and that himself and Silas Reynolds were sureties. The answer alleges that Barkley Wilson, James Wilson and Marvel, had previously become sureties for Zachariah P. Wilson, as one of the collectors of Sussex County, and that Zachariah P. Wilson being found in default as collector for some $600 or $700, in order to meet this deficiency, a loan was procured from the Bank, upon the bond of Zachariah P. Wilson and his sureties in the collector's bond in April, 1840—that interest was paid on this bond up to March, 1852, when in lieu of it, the bond in controversy for $670 was taken in which last bond, as the answer alleges, William Wilson and Silas Reynolds joined as sureties for the other obligors in it.

51—DEL. CH. IV.

That the bond for $800.00 taken by the Bank in 1850, executed by Barkley Wilson, Marvel and Reynolds, was given in order to release William Wilson and the estate of James Wilson who was then deceased. The answer further, in addition to taking issue upon the alleged liability of ths defendant as principal in the debt paid, insists upon the statute of limitations. Depositions and exhibits on both sides were read and the effect of the evidence is fully stated in the opinion of the Court.

A demurrer had been first filed and was argued at the March Term, 1871. *Ante p.* 108. The cause came on to a final hearing at the March Term, 1872, and was argued by *Layton* for the complainant and *Wright* for the defendant. The argument was entirely on the question of fact, whether upon the proof, William Wilson was the principal in the bond of 1852, and the application of the statute of limitations was also discussed.

AT THE SEPTEMBER TERM, 1872, THE CHANCELLOR expressed his opinion that, upon the evidence, William Wilson was principal in the bond of 1852, and that the payment of the second judgment bond was in fact a payment of William Wilson's debt by the administrator of Barkley Wilson, who stood as his surety. He intimated the opinion that a decree to refund the money was barred by lapse of time by analogy to the Statute of Limitations, and that the relief of the complainant, if any, was by subrogation to the original judgment. But whether the doctrine of subrogation applied to this case, and if so, whether such relief could be given without a special prayer which there was not in this bill, were points not argued, and the Chancellor deemed it proper to give counsel an opportunity to argue these points as, also, whether the equitable bar applied to this case.

On these points the case was re-heard March 14, 1873.

*Layton*, for the complainant.

Equitable circumstances may be shewn against the bar of the Statute of Limitations, as carrying on a protracted litigation. 2 *Sto. Eq. Jur. Secs.* 1521-1521 *a*; *Bond vs. Hopkins*, 1 *Sch. & Lef.* 413, 428-31; 6 *Pick.* 276; 1 *Halst.* 377; 3 *Stuart* 172; 2 *Bailey* 595.

The special prayer opens up the claim to any mode of relief,—not to direct substitution because we already have an assignment. The prayer is that defendant be decreed to pay, which covers any mode of enforcing payment, whether under the judgment or otherwise.

But at all events the relief is covered by the general prayer. *Mitf. Eq. Pl.* (37) (38) (45); *Cooper's Eq.* 9-14; 2 *Madd.* 171; *Eq. Draftsman* 8; 1 *Dan. Ch. Pr.* (434).

The doctrine of subrogation applies to this case. 2 *Bouv. Law Dict. Tit.* "*Subrogation*"; 1 *Sto. Eq. Jur. Secs.* 493-4-9 *a. b. c.* 501-2, 635; 1 *Lead. Cas. in Eq.* 91, 92, 101; 1 *Harring.* 374, *note*; 1 *Johns. Ch.* 409.

*Wright*, for the defendant.

The limitation applies to the whole claim, as a claim to be reimbursed for money paid, and therefore excludes as well the right of substitution as an incident to the claim.

The subrogation, to be effectual, must be to the contract or judgment in which the principal was a party, the judgment of 1852. But it was not that judgment, but the second, which was paid, *i. e.* the judgment of 1860. If there could be any subrogation it must be of all the obligors in the second judgment. The payment was for the benefit of all of them, as well as of Barkley Wilson's adminstrator. There is no case made for such relief as that.

The whole bill is framed as a bill for the recovery of a

specific sum of money by a direct decree. True, the history of the judgments is stated, but simply as an explanation of the non-suit at law not as a ground for subrogation.

There should be some grounds for subrogation alleged, such as the present insolvency of William Wilson.

Relief under the general prayer, by subrogation, would not be in harmony with the frame and manifest object of the bill.

THE CHANCELLOR :—

The case turns upon the single question whether William Wilson, the defendant, was the principal debtor and the other obligors sureties, only, in the bond for $670, given to the Farmers Bank on March 2d, 1852. The evidence leaves no doubt that such was the fact. It is true, as alleged in the answer, that this bond was given for a loan effected in order to meet Zachariah P. Wilson's default upon his bond as County Collector ; but it is sufficiently proved that, under a family arrangement between Zachariah P. Wilson and the defendant, who were brothers, and James Wilson, the father of both, William, in consideration of his receiving from the father that share of the latter's real estate before then devised by will to Zachariah, assumed the latter's indebtedness to the Bank on the bond for $670, which had been given by him and his sureties in the collectorship in April, 1840, and with that understanding, became principal to the Bank in the bond of March 1852. William Hancock was present at the execution of this latter bond, and states very positively his understanding, gathered from the conversation of William W. Wilson, Zachariah P. Wilson and James Wilson, that William "should take upon himself the payment "of the sum of $670 owed by said Zachariah P. Wilson to "the Bank, in consideration of having the interest of the

"said Zachariah P. Wilson in the lands of their father, "the said James Wilson." There are collateral circumstances concurring with this statement. Zachariah P. Wilson did not join in the bond of March 1852, though that was taken by the Bank in lieu of his bond of 1840 ; and in June 1852, shortly after William became bound for Zachariah's debt, the father conveyed to William by deed, the very tract of land which had been, by a will previously executed, devised by Zachariah. Nevertheless, I should hesitate to rest upon the recollection of one witness as to the purport of a conversation so far back, even with the concurring circumstances referred to, were it not for the clear acknowledgments by William W. Wilson of his liability as principal for the debt in controversy—an acknowledgment proved by two independent witnesses, Hancock and Welsh, to have been made on different occasions, and as recently as in the year 1864. They prove that, after Barkley Wilson's administratrix had paid the Bank debt, and while effort was being made to procure its reimbursement by William W. Wilson, he acknowledged his liability, but sought to have the debt first collected out of certain land owned by him when the judgment of the Bank was entered and still bound by it, but which he had subsequently sold to one Pettijohn ; and that he promised if that course were taken, to pay any deficiency out of his own lands. Welsh, as the agent of Barkley Wilson's administratrix, called on him in the fall of 1864 for a settlement of the debt, addressing him, the witness says, as the principal debtor. The defendant, in that interview, said, as Welsh states, " he could not pay it *at that time* ; that he was under a " contract to sell his lands with " some parties he named, " and if they complied, he *would be able* to settle it. He " did not then make any objection to the paying of it, " but afterwards, in another interview, some months " afterwards, he objected to our attempting to recover " the debt out of his lands he then had in possession,

"unless we would include, also, the tract of land which "said Wilson had conveyed to Levin Pettijohn," &c. Further, at several different times in 1864 and 1865, the defendant sought the influence of Hancock, who was his brother-in-law, to induce the administratrix of Barkley Wilson to put the claim in the hands of Mr. Saulsbury for collection, in order that the money might be got out of the land which he had sold to Pettijohn, but distinctly acknowledging, as the witness states, "that he "(Wilson) knew that he owed the money," and that, "if "it could not be got out of that land" (the Pettijohn land) "he would pay it out of his other lands." The statements of these witnesses are unequivocally and positively made ; both upon direct and cross-examination, they stand unimpeached, except by the suggestion, which is not of sufficient weight, that Hancock was surety for the administratrix of Barclay Wilson and Welsh, her agent ; and their testimony is corroborated by all the collateral circumstances material to the question,—such as the omission to join Zachariah P. Wilson in the bond of March, 1852, and the conveyance by the father to William of the land before devised to Zachariah. The taking by the Bank, of the bond of 1860, in lieu of the original one, without joining William as a party to it, may seem to be inconsistent with his having been the principal debtor ; but that transaction is explained otherwise by the attending circumstances.

The goods of both William W. Wilson and James Wilson, had been sold under the execution of the Bank and nothing realized to this debt. Considerable interest was in arrear raising the debt from $670 to $800. The Bank was pressing, and unless interest were paid, a new bond was necessary to convert it into principal. The remaining obligors, Barkley Wilson, Marvel and Reynolds, were obliged either to satisfy the Bank by some arrangement, or to submit to the sale of their own goods, then

levied on under the execution. Hence, the new bond. James Wilson did not join, because he was then dead. Why William Wilson did not join is unexplained. That he was omitted, as the answer alleges, in order that he might be released as a surety in the original bond, cannot be presumed, in the face of so much proof that he was the principal and not a surety in the original bond ; and it is a hypothesis excluded by the fact that Reynolds, whom the answer also alleges to have been a surety in the original bond, *was* joined in the substituted bond. Nothing appears in the case to explain why William Wilson was not a party to the substituted bond, except the fact that his goods having been already sold under execution, and his lands not being liable until the goods of his co-obligors should have been sold, he was in a condition to resist the pressure of the Bank for a new bond while his co-obligors, whose goods were next liable, felt themselves obliged to satisfy the Bank and so gave the new bond without William Wilson.

On the whole, I am clearly of opinion, upon the evidence, that the bond of March, 1852, was given for the debt of William Wilson, the obligors in it being his sureties. The question remains whether a court of equity will afford any, and what relief to the administratrix of Barkley Wilson, deceased, one of the sureties out of whose estate the debt has been paid ?

The special relief prayed by the bill is, that William Wilson, the principal, may be decreed to re-imburse the sum paid out of the sureties' estate. To this, the defendant, in addition to his defense upon the merits already disposed of, insists upon the Statute of Limitations, or rather upon the bar administered in this Court by analogy to the Statute. So far as concerns relief by a decree for the repayment of the money as so much money paid for the use of the defendant,—a decree founded only upon his implied contract to repay it—the plea must prevail. For more

than three years elapsed between the date of the payment of the debt by Barkley Wilson's administratrix (Aug. 16, 1864) and the filing of this bill on May 21, 1869. This being the statutory period of limitation against simple contract liabilities, such as would bar an action at law, equity will apply the same limitation as against a decree for the direct repayment of the money.

But a decree for the repayment of the money is not the only equitable remedy of the surety. He is entitled additionally, to be subrogated to the security given for the debt paid by him, that is, the judgment of 1852, so as to enjoy all the benefit of the security which the creditor— that is the Bank in this case—could have had under the judgment before its payment : and therefore, as there has not been a sufficient lapse of time to have barred the collection of the judgment by the creditor, it is not barred as against the equitable right of the surety.

The general doctrine of the sureties' right of subrogation to all securities held by the creditor for the debt paid, and, in this country, as well to the original security paid off as to collaterals, is not at all questionable ; but the application of the doctrine to this case, under its somewhat peculiar circumstances, I thought might admit of discussion ; and the question not having been raised at the argument upon the hearing, I directed a re-argument on that point. The re-argument has confirmed my first impression, that the surety in this case is entitled, in equity, to the benefit of the original judgment of 1852. The objection taken was, that the payment made by Barkley Wilson's administratrix to the Sheriff, was not a payment of *the original bond in which William Wilson was principal*, that judgment having been satisfied by the substituted bond ; that the payment made by the administratrix was a discharge only of the substituted bond, to which William Wilson was not a party ; that the only remedy of the administratrix was that under the substi-

tuted bond, for contribution from Barkley Wilson's co-obligors.

Now to this argument there are two answers:—

*First.* A court of equity *looks to the substance of the transaction.*

The substance and real effect of this transaction was, that the debt of William Wilson, for which the bond of 1852 was given, was paid out of the estate of Barkley Wilson, one of his sureties, for that debt. It was the same debt throughout, though represented by two successive securities. The second bond created no new debt, but was only a substituted security for the same debt, taken for the purpose, merely, of converting the accrued interest into principal. The payment by the administratrix, though made under process upon the substituted judgment, was, in substance and effect, a payment of the original debt; and equity will so treat it, precisely as if no second bond for the debt had intervened.

The argument of the complainant is in fault in assuming that the acceptance by the bank of the substituted bond, was an *absolute* extinguishment, *for all purposes,* of the original judgment. So it was, so far as concerned the remedy of the bank, under the judgment. That was gone, and William Wilson not being a party to the substituted bond, became released of all liability *to the bank.* But equity can hold the original judgment in force for the protection of any surety under it; although satisfied and extinguished as to the creditor. The correct view of the case in this Court, therefore, is, that the substituted bond was a discharge of the original judgment, only so far as concerned the creditor, leaving it, however, in force as against the principal for the protection of the sureties, or any of them, subsequently paying the debt.

*Second.* The other answer to the objection against applying the doctrine of subrogation to this case is, that,

52—DEL. CH. IV.

even were the direct and primary remedy of the surety, as is contended, under the substituted bond for contribution, by the co-obligors as for money paid on that bond only, still, the result of that proceeding would be to give to all the co-obligors under the second bond, a joint remedy by subrogation to the original judgment, as the debt of the principal, which would have then been paid by them all as sureties ; and thus, in the end, the same result would be reached ; that is, the recovery of the debt from Wilson, though it would be by a circuity of proceeding. Now, a court of equity will always reach by a direct decree what, otherwise, would. be accomplished by a circuity of pro-ceedings. It is less expensive and effects the same ends of justice.

The only point of difficulty I have felt is, how to frame a decree so as to afford certain and full relief. In the ordinary course of such cases the creditor is made a party in equity, and relief is obtained by a decree compelling the creditor to collect, in his name, the security paid, but for the use of the surety, or to assign it to the surety ; equity treating the security as being, for this purpose, un-satisfied and in force, and restraining the principal debtor, if this were necessary, from setting up the payment by the surety as a defense at law. In the present case, the creditor was not made a party and needed not to have been a party, because he has already assigned the judg-ment to the surety's administratrix who can, therefore, proceed at law in her own name as assignee. But in the proceeding at law by *scire facias* on the judgment, the administratrix has already encountered this obstacle to her recovery ; that the defendant, in the *scire facias* (the principal) insisted upon the effect of the substituted bond as an absolute satisfaction and extinguishment of the original judgment, that is, the judgment on which the *scire facias* issued; that the payment by the administratrix must be treated as a payment made only upon the substi-

tuted bonds, giving her no remedy under the statute upon the original judgment. The Superior Court sustained this objection upon a motion for a non-suit, the giving of the substituted bond having been disclosed in the course of the evidence of the plaintiff in the *scire facias.* The ruling of the Superior Court was inevitable ; for such was, at law, the technical effect of the substituted bond. A court of law must have treated it as an absolute satisfaction, that court taking no cognizance of the equitable rights of sureties. It requires, in such a case as this, the aid of a court of equity to enable the surety to obtain at law the benefit of the judgment by restraining the principal from setting up or insisting upon the effect at law of the substituted bond, as satisfaction of the original judgment. Thus, the payment by the administratrix may be treated as if it had been made to the original judgment, without the intervention of the second bond. A court of equity has full power, when necessary for the protection of the equitable rights of a party, to restrain his adversary as well from setting up an inequitable defense, as from prosecuting an inequitable action. This relief has been frequently given against an inequitable use of the plea of the statute of limitations. I can see no reason why the power may not as well be executed in this case.

The decree in this cause being a somewhat unusual one it is here appended in full :—

And now, to wit, this 20th day of May, this cause having been heard before the Chancellor on the 15th day of March, A. D. 1872, upon the bill, answer, exhibits and depositions, and the same having been debated by the solicitors of the respective parties at the said March Term 1872, and again on the 14th day of March, A. D. 1873 and having been held under advisement until this date and maturely considered by the Chancellor. It appearing to the Chancellor that the defendant William Wilson, Bark-

ley Wilson, now deceased, and Silas Reynolds, did on the 19th day of February, A. D. 1852 execute and deliver to the Farmers Bank of the State of Delaware at Georgetown, their joint and several obligation bearing date the day and year last aforesaid, in the penal sum of one thousand three-hundred and forty dollars with condition for the payment of the real debt of six hundred and seventy dollars, on which said obligation judgment was entered in the Superior Court for Sussex County being No. 136 to October Term, 1851. And it appearing to the satisfaction of the Chancellor, from the proofs in the cause, that in the aforesaid obligation the said William Wilson was the principal debtor and that the other named obligors executed the same as sureties of the said William Wilson. And it further appearing to the Chancellor that afterwards, to wit, on the second day of September A. D. 1860, three of the said obligors in the before-mentioned obligation executed and delivered to the said Farmers Bank their joint and several obligation bearing date the day and year last aforesaid, in the penal sum of one thousand and six hundred dollars, with condition for the payment of the real debt of eight hundred dollars, which said last mentioned obligation was given to secure the same debt mentioned in the first mentioned obligation with its interest in arrear and unpaid up to the date of the said second obligation,—which said second obligation was accepted by the said Farmers' Bank in lieu of the first mentioned obligation, and judgment was entered thereon in the Superior Court for Sussex County being No. 6 to April Term 1860. And it further appearing to the Chancellor that after the giving of the said second obligation the said Josiah Marvel one of the said obligors therein departed this life after which process of execution upon the judgment entered thereon, being the said judgment No. 6 April term, 1860, was issued and the same was levied upon the goods and chattels of the said Barkley Wilson and Silas Reynolds the other obligors, therein,

pending which the execution and levy, the said Barkley Wilson departed this life, and thereupon his administratrix, Louisa N. Wilson, on the 16th day of August A. D. 1864, paid to the Sheriff of Sussex County to whom the said execution had been delivered to be executed the sum of ($1,046.46,) that being the amount of the debt, interest and costs in the said execution. And it being considered by the Chancellor that the said second obligation for the debt of $800, bearing date the 2d day of September A. D. 1860, having been given as a substituted security for the judgment on the original obligation for the debt of $620, with its accrued interest bearing date the 19th day of February A. D. 1852, and the judgment upon the said substituted obligation having been paid and satisfied by the said Louisa A. Wilson, as administratrix of the said Barkley Wilson deceased, one of the obligors in said substituted obligation, being one of the sureties in said original obligation, that in equity and good conscience the said payment ought to be deemed and taken to be of the same force and effect as if the same had been made directly in discharge and satisfaction of the said original judgment without the intervention of any substituted obligation or judgment whatever, and that the said administratrix upon making said payment was entitled in equity and good conscience to be reimbursed by the said William Wilson as the principal debtor, the said sum of money with its interest which was so paid by the said Louisa A. Wilson as administratrix as aforesaid ; and it being also considered by the Chancellor that the said administratrix upon making such payment was entitled to be subrogated to the use and benefit of the said original judgment for the purpose of the reimbursing to the estate of her intestate of the said sum of money so paid by her as aforesaid, and to hold and use the said judgment with all the rights and remedies thereon for the purpose aforesaid which the said Farmers Bank of the State of Delaware at Georgetown as the plaintiff therein

had and held at and prior to the substitution therefor of the said second obligation and that the complainant Peter N. Dodd as administrator *de bonis non* of said intestate is now also entitled in like manner. And it appearing to the Chancellor that the said Farmers' Bank has by writing under the hand of the President of said corporation and its corporate seal and attested by two witnesses, pursuant to the statute in that behalf, bearing date the 14th day of March A. D. 1868, duly assigned unto the said Louisa A. Wilson as administratrix of the said Barkley Wilson deceased the aforesaid judgment No. 136 to October Term 1851, so that proceedings can now be had and taken at law for the collection of said original judgment by the said present administrator *de bonis non* of said Barkley Wilson deceased under the said assignment ; but it appearing that an impediment to the collection of the said original judgment in a court of law by the said administrator *de bonis non* under the said assignment may arise by reason of the giving of the said second or substituted obligation in lieu of the said original judgment, so that the equitable right of the said administrator *de bonis non* to the use of said original judgment for the reimbursement of the money so paid by her as aforesaid may be defeated unless the aid of this Court be given in order to remove the said impediment. It is thereupon and upon consideration of all the recited premises, now ordered, adjudged and decreed, by the Chancellor, that the defendant William Wilson, do within three months from this date pay and reimburse to the said Peter N. Dodd as administrator *de bonis non* of the said Barkley Wilson deceased the aforesaid sum of (1004.46) so paid by the said Lousia A. Wilson as administratrix as aforesaid in satisfaction of the said second obligation, with interest from the date of such payment, to wit, from the 16th day of August A. D. 1864 or that an attachment issue. And it is further ordered, adjudged and decreed by the Chancellor that the said Peter P. Dodd as administrator *de*

*bonis non* as aforesaid is in equity and good conscience entitled to be subrogated to the use and benefit of the said original judgment, the same being a judgment for the penal sum of one thousand three hundred and forty dollars, entered in the said Superior Court for Sussex county on the 2d day of March A. D. 1852 being No. 136 to the April Term 1851, and being for the real debt of six hundred and twenty dollars with interest from the 19th day of February A. D. 1852, to the end and for the purpose of being reimbursed under and by means of said judgment the aforesaid sum of (1004.46) so paid as aforesaid by the said Louisa A. Wilson as administratrix as aforesaid with interest thereon from the date of such payment, to wit, from the 16th day of August, A. D. 1864, to which end the said Peter P. Dodd, as administrator *de bonis non* of the said Barkley Wilson deceased, is entitled to have and exercise all the rights and remedies, at law or in equity, which at or before the giving of the said second or substituted obligation the plaintiff in the said original judgment held or was entitled to. And further to the end that the equitable rights of the said Peter P. Dodd, administrator *de bonis non* as aforesaid in the premises may be made effectual, it is ordered, adjudged and decreed that the said William Wilson, his executors and administrators and his or their attorney or attorneys be, and he and they hereby are perpetually enjoined and restrained from at any time pleading, setting up, or, in any manner whatsoever, insisting upon or taking advantage of the before recited second obligation for $800, bearing date the said 2d day of September, A. D. 1860, or the judgment entered thereon, or the fact that the said second obligation was so executed and accepted as aforesaid in lieu of the said original judgment, as a bar, objection, defense or impediment whatever in any suit, action or other process whatever, at law or in equity, which hereafter at any time after three months from this date and in default of the payment by the defendant of the said sum of $1404.64, with its interest

as before decreed may be instituted or prosecuted by or on behalf of the said Peter P. Dodd as administrator *de bonis non* as aforesaid upon the said original judgment, No. 136 to October Term 1851, in the Superior Court for Sussex County or for the collection of the same to such amount as may be necessary fully to reimburse to the said administrator *de bonis non*, the aforesaid sum of (1404.46) with interest from the 16th day of August, A. D. 1864.

And it is further ordered that the defendant pay the costs in this cause within three months, or attachment.