**REYNOLDS INTERNATIONAL PEN CO. v. EVERSHARP, Inc., et al.**

Civil Action No. 739.

District Court, D. Delaware.

Nov. 17, 1945.

Clair J. Killoran (of Killoran & VanBrunt), of Wilmington, Del., Thurman Arnold (of Arnold & Widrup), of Washington, D. C., and Julian H. Levi and Norman Gerlach, both of Chicago, Ill., for plaintiff.

James R. Morford (of Marvel & Morford), of Wilmington, Del., and Harold T. Edwards, of New York City, for defendant Eberhard Faber.

Aaron Finger (of Richards, Layton & Finger), of Wilmington, Del., Boykin C.

Wright and Garrard Winston (of Shearman & Sterling & Wright), of New York City, and Grier D. Patterson (of Winston, Strawn & Shaw), of Chicago, Ill., for defendant Eversharp, Inc.

LEAHY, District Judge.

The affidavits in support of the motion for preliminary injunction charge that defendants have falsely asserted that their two Biro patents cover all ball-bearing pens and that anyone who makes and vends such a pen infringes. Plaintiff contends the ball-pointed pen is old in the art (circa 1888) and defendants' patents cover merely containers, springs, plungers, pistons, etc.—useful in a ball-pointed pen—and that the patents cannot cover the ball-pointed pen itself. Jurisdiction and immediate injunctive relief are based upon threats made by defendants to retailers throughout the United States that if they attempted to market plaintiff's pen they not only may face a possible infringement suit but that defendants will retaliate by refusing to sell to such retailers any of defendants' pen or pencil products. Much statement is made that with the termination of manufacture of war materials and a high purchasing power present, a seller's market exists for the sale of fountain pens and if plaintiff is prevented from satisfying the needs of the Christmas trade plaintiff will suffer irremediable damages.[1]

Defendants contend the real situation reveals that they and not plaintiff should receive injunctive relief. Defendants' affidavits recite that their engineers have engaged in intensive laboratory and technical research for the past year in developing the ball-pointed pen covered by the two Biro patents. When they offer their pen to the American public it is their wish that such a pen will not only be efficient but a credit to the names of the two defendants who will sponsor it. They charge that plaintiff is financially irresponsible, is in no position to maintain a repair service, and does not have the facilities to fill orders to the extent of 50,000 pens. Defendants also charge that plaintiff is not able to produce 20,000 pens a day, and that plaintiff's claim that the Reynolds pen will write two years without refilling ("it never smudges or smears—it won't leak or drip in pocket or handbag—it writes clearly through four to eight carbons—it writes on cloth or under water or at stratosphere altitudes without leaking") is simply just not so.[2] At the time of argument defendants requested the Court to enter an order directing plaintiff to sell defendants one of the Reynolds pens because they had not even seen one until the day before the argument, when defendants' engineers looked at one of the pens, which was a physical exhibit, in the Clerk's office. If on the day of argument defendants had not had time to make a satisfactory examination of the device, their argument that the plaintiff's pen lacks utility seems unconvincing under these circumstances.

In addition to plaintiff's misrepresentations to the pen-buying public, defendants finally allege that plaintiff is falsely charging them with violation of the antitrust laws.

Plaintiff states the purpose of the present application for preliminary injunction is to seek judicial aid in gaining access "to a market guaranteed by fundamental American law for a new and vigorous, independent enterprise that wants to use war plants and convert them to the peace effort and furnish the public immediately with a revolutionary fountain pen." While this exorcism is bottomed upon a laudable premise, upon the basis of the present record it would be difficult enough to decide who would be entitled to the preliminary injunction if the evidence had a high quality. In addition to the pleadings, the only source of what has occurred is to be found in the affidavits. And the affidavits contain hearsay and hearsay on hearsay. Every substantial allegation of the complaint is denied by the answers. There is a sharp conflict on every question of fact. These conflicts cannot be resolved by reading hearsay affidavits. In truth, it is almost impossible to decide the fact questions on any kind of affidavits. But in so far as controversy ex-

---

[1] That defendants' alleged threats to the trade have not totally prevented plaintiff from marketing its pen may be found in an ad of Gimbel's in the New York Times of October 28, 1945. It is not clear whether before Gimbel's would put the Reynolds pen on sale it required an indemnity agreement in the event it became a party to any infringement suit.

[2] After subjecting the plaintiff's pen to tests, Gimbel's Bureau of Standards made its report. Apparently the report was satisfactory for the Reynolds pen has now been on sale in the New York City store for the past several weeks.

ists there is certainly a suggestion that there are threats in the air.

However, the relief sought in the present case calls for an extraordinary process. It is the rule of this circuit and district that a preliminary injunction does not issue where the moving papers disclose the parties are in serious dispute on conflicting questions of fact and law. Warner Brothers v. Gittone, 3 Cir., 110 F.2d 292; Murray Hill Restaurant v. Thirteen Twenty One Locust, 3 Cir., 98 F.2d 578; Hand v. Missouri-Kansas Pipe Line Co., D.C. Del., 54 F.Supp. 649; Oneida Community v. Fouke Fur Co., D.C.Del., 286 F. 757; General Talking Pictures v. Stanley Co., D.C. Del., 42 F.2d 904; Popular Mechanics v. Fawcett, D.C.Del., 1 F.Supp. 292; United States v. Weirton Steel Co., D.C.Del., 7 F. Supp. 255. Yet while no injunction should issue at the present time both parties to the case at bar should be admonished to refrain from uttering extra-judicial statements to the trade. It is only possible to decide after a "full dress" trial of the issues whether there is a real controversy between the parties, whether the Reynolds pen infringes the two Biro patents, whether those patents are valid, whether defendants have violated the antitrust laws, what are plaintiff's damages, and whether defendants are entitled to relief under their counterclaim and the extent of their damages. In this connection it would not appear that the refusal to grant the preliminary injunction will cause plaintiff irremediable injury. Having made, at least, one sale to a well-known department store in New York City, and it being possible to demonstrate production, if plaintiff eventually succeeds its damages would appear not to be so speculative as to make it impossible to form an estimate. See Stentor Electric Mfg. Co. v. Klaxon Co., 3 Cir., 115 F.2d 268. Until this lawsuit is decided defendants—regardless of whether they have or have not done so in the past— should not threaten the trade on account of the Reynolds pen and plaintiff, in turn, should restrict its remarks, as to defendants' violation of law, to the courtroom. The parties are in court and their disagreements should be settled there. If either party becomes careless, until after the trial of the cause is had, about the admonitions just written, an application for an injunction pendente lite will receive quick consideration.

For the present, the motion for preliminary injunction is denied.