**HENIS et al.**
v.
**COMPANIA AGRICOLA DE GUATEMALA et al.**
Civ. No. 1530.

United States District Court,
D. Delaware.
April 30, 1953.
On Motion to Dismiss Oct. 22, 1953.

Arthur G. Logan (Logan, Marvel & Boggs) and Stephen E. Hamilton, Jr., of Wilmington, Del., and Alexander Kahan, of New York City, for plaintiffs.

Caleb S. Layton, Wilmington, Del. (Richards, Layton & Finger, of Wilmington, Del., Inzer B. Wyatt and Edward M. Harris, Jr. (Sullivan & Cromwell), of New York City, for International Railways of Central America.

William S. Potter and James L. Latchum, Wilmington, Del. (Berl Potter & Anderson), of Wilmington, Del., Porter R. Chandler, New York City, and Edwin J. Jacob, Rego Park, N. Y., Davis, Polk, Wardwell, Sunderland & Kiendl, New York City, for Compania Agricola de Guatemala.

LEAHY, Chief Judge.

 A mere reading of the affidavits reveals sharp issues of fact between the parties. The pleadings also suggest difficult questions of law are in dispute.

The relief which plaintiffs, here, seek, calls for one of the extraordinary equitable remedies. It is established law of this District and Circuit that a preliminary injunction will not issue under such circumstances. Sneider v. Transcontinental & Western Air., D.C.Del., 79 F. Supp. 339, 341; Reynolds International Pen Co. v. Eversharp, D.C.Del., 63 F. Supp. 423, citing Warner Bros. Pictures v. Gittone, 3 Cir., 110 F.2d 292; Murray Hill Restaurant v. Thirteen Twenty One Locust, 3 Cir., 98 F.2d 578; Hand v. Missouri-Kansas Pipe Line Co., D.C.Del., 54 F.Supp. 649; Oneida Community v. Fouke Fur Co., D.C.Del., 286 F. 757; General Talking Pictures v. Stanley Co., D.C.Del., 42 F.2d 904; Popular Mechanics v. Fawcett, D.C.Del., 1 F.Supp. 292; United States v. Weirton Steel Co., D.C. Del., 7 F.Supp. 255. The party seeking a preliminary injunction must not only allege facts as to which there is no serious dispute but also indicate such facts must show that the moving party has a reasonable probability of success upon final hearing.

█ If any doubts are created by the paper record as to the merits of the claim for relief, the preliminary injunction will be denied. General Talking Pictures Corp. v. Stanley Co., D.C., 42 F.2d 904, 906; Porges v. Vadsco Sales Corp., 27 Del.Ch. 127, 135, 32 A.2d 148; Belle Isle Corp. v. MacBean, 29 Del.Ch. 261, 49 A.2d 5.

██ The threatened injury, if it can be compensated for by a monetary award, will not support the issuance of the court's injunctive process. The threatened damage must be irreparable. Hand v. Missouri-Kansas Pipe Line Co., supra.

And Now, April 30, 1953, plaintiffs' motion for preliminary injunction pen-dente lite having come on for argument, and counsel having been heard, it is

Ordered that said motion for preliminary injunction be and the same hereby is denied.

### On Motion to Dismiss.

This is a derivative action on behalf of International Railways of Central America, a New Jersey corporation (referred to as "IRCA"), against that corporation and Compania Agricola de Guatemala, a Delaware corporation (referred to as "Agricola").

Agricola filed a motion, under Federal rule 12(b), 28 U.S.C., for an order of dismissal for failure to state a claim. The motion also asks, pursuant to Federal rule 23(b) and the corresponding New Jersey statute, N.J.S.A. 14:3–16, for dismissal because plaintiffs were not shareholders of IRCA at the time of the transactions complained of. In the alternative, defendant asks for an order staying the proceedings here until final determination of a pending action in the Supreme Court of New York, entitled Ripley v. International Railways of Central America and United Fruit Company, 196 Misc. 798, 95 N.Y.S.2d 202, Id., 276 App.Div. 1006, 95 N.Y.S.2d 871, on the ground the New York litigation involves the same subject matter as the case at bar. IRCA joins in the latter motion asking for a stay pending determination of the Ripley action. A motion of plaintiffs for preliminary injunction was denied.

The complaint charges a civil conspiracy against Agricola and United Fruit Company. It is alleged Agricola entered into a conspiracy with United in 1936 to injure IRCA, which conspiracy culminated in Agricola obtaining certain contracts with IRCA; and under those contracts Agricola obtained from IRCA certain secured notes and common stock of IRCA.[1] The relief prays not only for

---

1. A summary of the transactions complained of is as follows:

 (1) "This action is to cancel and rescind contracts between International and Agricola dated September 17, 1936, and to cancel the issuance by International to Agricola, pursuant to said contracts, of $1,750,000 of International's 3-1/2% secured notes and 185,000 shares of its common stock because Agricola secured the execution of said contracts by International and procured said notes and

**226**

cancellation of the stock and notes but a monetary decree is also sought.

 1. The motion to dismiss under Federal rule 12(b) is based on a defense of statute of limitations; such may be raised by a motion to dismiss.[2] The complaint was filed on March 30, 1953. The applicable Delaware statute of limitations, Title 10, Del.Code, 1953, § 8106, provides as follows: " * * * no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action * * *." In Delaware, an action on the case must be brought within 3 years; and it is the rule in Delaware that actions for an injurious conspiracy are considered actions on the case.[3] Hence, the applicable Delaware statute of limitations, pertaining to civil conspiracies, is 3 years. This being the law of the forum, it is binding in the case at bar.[4] If the cause of action here stated accrued prior to March 30, 1950, the action must be dismissed, as it was commenced more than 3 years after the expiration of the accruing of the cause of action. In civil conspiracies the statute of limitations begins to run upon the occurrence of an overt act resulting in damage.[5] I think our case of Park-In Theatres v. Paramount-Richards Theatres, supra, controls. It, too, involved a civil conspiracy. The action was dismissed as barred by the Delaware 3-year statute of limitations. Judge Rodney, there, wrote (90 F.Supp. at page 729): "The gravamen of a civil action for conspiracy is found in the overt act which results from the conspiracy and culminates in damage to the plaintiff. As said in Nalle v. Oyster, 230 U.S. 165, 182, 33 S.C. 1043, 1048, 57 L.Ed. 1439, 'no civil action lies for a conspiracy unless there be an overt act that results in damage to the plaintiff.'

"The distinction between the application of a Statute of Limitations in a criminal conspiracy case and such application in a civil case based upon a conspiracy has been clearly pointed out in Momand v. Universal Film Exchanges, 1 Cir., 172 F.2d 37, at page 49. There it is shown that in a criminal prosecution the Statute of Limitations does not begin to run until the last overt act performed in compliance with the original agreement has been accomplished. A civil case, however, is based upon the damage caused by the commission of the overt act and the applicable statute must run from the time of the commission of that act which is alleged to have caused the damage. * * *

"If the Statute of Limitations had no precise date, as the happening of the overt act, from which it could be computed, then there could be no limitation

---

stocks pursuant to a *conspiracy* it had with United * * *." (Comp. par. 9).

(2) "United and Agricola acted in *concert and pursuant to a conspiracy* to obtain contracts and to obtain for Agricola the Notes and common stock * * *." (Comp. par. 9).

(3) "This action also seeks *damages* for such wrongdoing." (Comp. par. 9).

(4) "To assure such continued and certain control over International, Agricola in 1936, entered into a *plan and conspiracy* with United to obtain the needed continued and certain control over International when the voting trust terminated, which *plan and conspiracy was carried out by causing International to enter into the contracts and to issue the Notes and stock, mentioned above.* * * *" (Comp. par. 13).

(5) "Agricola obtained the contracts from International on or about September 17, 1936, through the use of the control and domination referred to above and through false representations to International and its stockholders who were independent of United and Agricola." (Comp. par. 16). (Emphasis added).

2. Park-In Theatres v. Paramount-Richards Theatres, D.C.Del., 90 F.Supp. 727, affirmed 3 Cir., 185 F.2d 407.

3. Diver v. Miller, 4 W.W.Harr. 207, 148 A. 291.

4. Carpenter v. Rohm & Haas Co., D.C. Del., 75 F.Supp. 732, affirmed 3 Cir., 170 F.2d 146; Alropa Corp. v. Myers, D.C.Del., 55 F.Supp. 936.

5. 34 Am.Jur. p. 129.

of actions at all applicable where the conspiracy continued. Of even greater importance is the fact that the injured party would seem to have no right of action so long as the conspirators chose to keep the conspiracy in a continuing state. The Statute of Limitations must run from the commission of the several overt acts complained of.

"In this case there are only two overt acts clearly defined and indicated in the amended complaint. One is the alleged duress and conspiracy resulting in the closing of the Camden Theatre in 1933. The other is the duress and conspiracy culminating in the exclusive license agreement of November 20, 1940." In the Park-In Theatres case, as here, it was argued that the conspiracy is a continuing wrong and that as long as damages flow from the overt acts the statute does not run. Judge Rodney rejected that view and stated, 90 F.Supp. at page 729: "At the argument plaintiff's counsel suggested several matters in the rather lengthy amended complaint that could be considered as overt acts happening or coming to their knowledge within the Statute of Limitations. ● Some of these are clearly matters only affecting damages allegedly resulting from the overt act and not such matters as would themselves constitute overt acts from which to compute the running of the Statute. * * * In the present complaint two, and two only, overt acts are expressly alleged and these are of date beyond the Statute of Limitations, although damages resulting therefrom may have continued."[6]

In the case at bar plaintiffs allege two overt acts as a result of the alleged conspiracy of Agricola and United. The alleged unlawful conspiracy resulted in Agricola obtaining certain contracts, dated September 17, 1936, from IRCA. The second phase of the alleged conspiracy was completed in 1936 when IRCA was required, under the contract, to issue its secured notes and stock to Agricola. Both overt acts occurred in 1936, more than 16 years prior to the commencement of the case at bar. Clearly the alleged conspiracy which forms the basis of a derivative action accrued in 1936. By that time all the overt acts had been committed.

 Clearly the present suit comes too late. It is long after the expiration of 3 years from the date of the accrual of the cause of action. Although certain equitable relief is demanded in the case at bar as an aid to the recovery of damages, this does not hinder the application of the statute of limitations. In fact, under the Delaware law, courts of equity apply the applicable statute of limitations.[7] Since the present suit is based upon diversity, no recovery can be had when a state statute of limitations would have barred recovery had the case been instituted in the state courts. See Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. There was no allegation that any fraudulent concealment was had in connection with the making of the contracts or the issuance of the notes and stock after 1936, which would serve to toll the 3-year period of limitations. More than that, the facts alleged in the present complaint, involving the contract and the issuance of the notes and stock were certainly known on or before February 14, 1949, when a group of stockholders instituted in the Supreme Court of New York the case of Ripley v. IRCA. This suit contains essentially the same cause of action and would appear to seek the same relief as the one at bar. I decide the present cause of action for the recovery of damages and other equitable relief has long been barred by the applicable Delaware

---

6. Judge Rodney was affirmed by per curiam opinion in 3 Cir., 185 F.2d 407.

Other cases to the same effect are, Northern Kentucky Telephone Co. v. Southern Bell Tel. & Tel. Co., 6 Cir., 73 F.2d 333, 97 A.L.R. 133, certiorari denied 294 U.S. 719, 55 S.Ct. 546, 79 L.Ed 1251;

Betz v. Dailey, 3 N.Y.St.Rep. 309, 41 Hun 645; Porter v. Mack, 50 W.Va. 581, 40 S.E. 459; Montgomery v. Crum, 199 Ind. 660, 161 N.E. 251.

7. Dodd v. Wilson, 4 Del.Ch. 399; Perkins v. Cartmell, 4 Harr., Del., 270; Gootee v. Riggin, 12 Del.Ch. 91, 107 A. 452.

statute of limitations. For this reason, the complaint should be dismissed.

■ 2. There is one further reason why the complaint should be dismissed. Federal rule 23(b) requires plaintiffs to have been shareholders at the time of the action complained of. The appropriate state law would be the state of incorporation of IRCA to support the proposition. Gallup v. Caldwell, 3 Cir., 120 F. 2d 90; McQuillen v. National Cash Register Co., 4 Cir., 112 F.2d 877, 882, certiorari denied 311 U. S. 695, 61 S.Ct. 140, 85 L.Ed. 450. The law of New Jersey is the same as Federal rule 23 (b).[8, 9] But whether the question is viewed as one arising under Federal rule 23(b) or as one arising under the law of New Jersey,[10] the question is the same. It would appear under the law of both New Jersey and in the United States courts it must be made to appear that a plaintiff was a shareholder at the time of the transactions complained of.

The complaint alleges plaintiff Henis is' the owner of 100 shares of IRCA which were purchased in October, 1951. Plaintiff Kern, it is alleged, is the owner of 200 shares of preferred stock which were also purchased in October, 1951. As stated, this action is brought to rescind certain contracts between IRCA and Agricola made in September, 1936, and to cancel the issuance by IRCA to Agricola of certain secured notes and common stock of IRCA. It is manifest from the complaint itself that plaintiffs acquired their stock 15 years after the transactions of which they complain.

In McQuillen v. National Cash Register Co., D.C.Md., 22 F.Supp. 867, 872, the plaintiff sought to attack a stock issue. Motion was made under old Equity Rule 27 (now FR 23(b)) on the ground the stock issue occurred prior to the date on which plaintiff became a shareholder. The argument was made that the issuance of the stock was a continuing wrong and that therefore the wrong still continued to occur when plaintiff bought his stock. In disposing of this contention the Court said: "The actual issuance of the "B" stock, of which plaintiffs complain, took place prior to June 20, 1928; that is to say, in January, 1926. *We cannot subscribe to the theory that this issuance was a continuous transaction, on the ground as asserted that the defendants continually conspired to ruin or control the corporation through their ownership of this stock.* Rather is it correct to say that the issuance of this stock was a finished transaction in 1926. To hold otherwise would be to invent a means to evade Equity Rule 27." (Emphasis added.) [11]

8. "14:3–16. *Time of ownership of share or voting trust certificate*

"In any action, suit or proceeding brought or maintained in the right of a domestic or foreign corporation by the holder or holders of shares, or of voting trust certificates representing shares, of such corporation, it must be made to appear *that the complainant was a shareholder or the holder of a voting trust certificate at the time of the transaction of which he complains or that his share or voting trust certificate thereafter devolved upon him by operation of law.*" (Emphasis added.)

9. In Bookman v. R. J. Reynolds Tobacco Co., 138 N.J.Eq. 312, 48 A.2d 646, 692–695, the New Jersey Court of Chancery discusses the foundation of the stock-ownership requirement and states it is the desire to prevent litigation by persons who purchase stock for the purpose of instituting litigation.

10. It is interesting to note that § 327 of the Delaware Corporation Law embodies the same provision in respect of domestic corporations:

"§ 327. Stockholder's derivative action; allegation of stock ownership

"In any derivative suit instituted by a stockholder of a corporation organized under the laws of this State, it shall be averred in the complaint that the plaintiff was a stockholder of the corporation at the time of the transaction of which he complains or that his stock thereafter devolved upon him by operation of law." 8 Del.C. § 327.

11. The District Court's opinion was affirmed in McQuillen v. National Cash Register Co., 4 Cir., 112 F.2d 877, certiorari denied 311 U.S. 695, 61 S.Ct. 140, 85 L.Ed. 450.

Likewise, can the allegations in the complaint that the wrong, here, is a continuing one because the contracts between the parties continue in effect entitle these plaintiffs to maintain the action at bar? See, Levitan v. Stout, D.C. W.D.Ky., 97 F.Supp. 105. One Delaware authority is in point. In Newkirk v. W. J. Rainey, Inc., 31 Del.Ch. 433, 76 A.2d 121, at pages 123–124, Chancellor Seitz wrote:

"I must determine what are the 'transactions' and whether they were continuing when plaintiffs acquired their stock. Of course, in one sense every wrongful transaction constitutes a continuing wrong to the corporation until remedied. But if the rule embodied in Sec. 51A is to be meaningful, then clearly 'continuing wrong' cannot be construed in such a sense because it would substantially defeat the statutory policy embodied in Sec. 51A. That policy is the prevention of the evil of purchasing stock in order to maintain a derivative action designed to attack a transaction which occurred prior to the purchase of the stock. See Rosenthal v. Burry Biscuit Corp. [30 Del.Ch. 299], 60 A.2d 106.

"*Although a conspiracy culminating in the 1948 merger is alleged, the fact is that plaintiffs complain of and seek relief with respect to three specific transactions. They involve three stock purchases in the years 1944 and 1945. Those purchases in my opinion are the transactions in the sense in which the term 'transaction' is employed in Sec. 51A. I say this because they are the wrongful acts which plaintiffs want remedied and which are susceptible of being remedied in a legal tribunal. The allegation of a conspiracy cannot obscure the hard fact that the stock purchases are the wrongs which plaintiffs want rectified. Once it is decided, and I so decide, that the stock purchases are the 'transactions' of which plaintiffs complain, it almost necessarily follows under the undisputed facts that such transactions were consummated prior to the date plaintiffs acquired their stock.*

"To paraphrase the statement of the New York court in Weinstein v. Behn, Sup., 65 N.Y.S.2d 536, affirmed, 272 App. Div. 1045, 75 N.Y.S.2d 284, the allegations concerning the conspiracy refer back to the alleged original wrongs, all of which occurred before these plaintiffs acquired their stock. Those wrongful acts cannot by the specious device of employing appropriate language be transferred into continuing wrongs for the purpose of overriding Sec. 51A of the General Corporation Law of Delaware. * * *" (Emphasis added.)

■ The transactions complained of in the case at bar are 1. the execution of the contracts in 1936 and 2. the issuance to Agricola by IRCA of the secured notes and common stock pursuant to those contracts. No allegation of "continuing wrong" can ignore the basic fact the contracts were executed and the notes and stock were issued 15 years before present plaintiffs became stockholders of IRCA. These transactions "cannot by the specious device of employing appropriate language be transferred into continuing wrongs for the purpose of overriding" Federal rule 23 (b) and N.J.S.A. 14:3–16. Moreover, the Ripley litigation in New York had already been in progress for more than two and one-half years before plaintiffs, here, bought their stock. The pleadings in the New York action disclosed all of the facts charged here in the instant case some three months before present plaintiffs made their purchases. The relief sought here is on behalf of the corporation. Consequently no inequity to IRCA can accrue to it by dismissing the complaint as to present plaintiffs. The issues they wish to litigate are now being fully litigated in the Ripley litigation in New York. Under these circumstances, the application of the requirements of Federal rule 23(b) involves no injustice or works no hardship upon present plaintiffs. A final determination in the Ripley case will be conclusive on all stockholders, including present plaintiffs, even if I should permit them to continue the

action at bar. I conclude present plaintiffs have no standing in this court.

Having decided the present complaint should be dismissed, for both of the reasons discussed above, there is no necessity to pass on that phase of the motion which seeks the proceedings here be stayed until final determination of the Ripley action.

An appropriate order in accordance with the foregoing should be submitted.