J. Edgar COWART and Walter J. Cowart, Plaintiffs,

v.

CITY OF OCALA, FLORIDA, a municipal corporation, Defendant.

No. 79–69–Civ–Oc.

United States District Court, M. D. Florida, Ocala Division.

Oct. 11, 1979.

* As he was in *Herrera v. Exxon Corp.,* 430 F.Supp. 1215, 1216–1220 (N.D.Cal.1977).

776

C. Ray Greene, Jr., Jacksonville, Fla., for plaintiffs.

Seymour Rowland, Ocala, Fla., for defendant.

OPINION

CHARLES R. SCOTT, District Judge.

This action involves an invocation of 42 U.S.C. § 1983 and the Fourteenth Amendment,[1] challenging a decision by certain municipal authorities to deny plaintiffs' application for a building permit. Plaintiffs claim that the decision was discriminatory, and, therefore, arbitrary and capricious, denying plaintiffs Due Process and Equal Protection guaranteed by the Fourteenth Amendment. Plaintiffs seek a mandatory injunction requiring defendant to issue the permit and an award of damages for costs and attorney fees resulting from the denial of the permit and subsequent delay. This Court has jurisdiction under Title 28 of the United States Code, Section 1331 and Section 1343(3) and (4). The Court finds that plaintiffs have failed to prove that denial of the building permit was discriminatory or arbitrary and that defendant is, therefore, entitled to judgment.

1. Plaintiffs also allege that defendant's conduct violated Article I, Section 10 and Article VI, Clause 2 of the United States Constitution (Impairment of Contracts and Supremacy Clause, respectively). In addition, plaintiffs allege deprivations of their rights under 42 U.S.C. §§ 1981, 1982, and 1985. Plaintiffs produced no evidence that would support any of these claims. The Court, therefore focuses its opinion solely on plaintiffs' Fourteenth Amendment and § 1983 claims.

2. The most substantial injury alleged by plaintiffs was the probable loss of a HUD commitment for financial support of their project in the form of rent subsidy and insurance of advances and the resulting loss of some or all of the money expended in the painstaking process of obtaining this commitment. The Court concluded that injury could be avoided without the issuance of the requested preliminary mandato-

This action was filed on June 21, 1979. On July 23, 1979, plaintiffs also filed a motion for preliminary injunction and for consolidation of the hearing on that motion with the trial on the merits. A hearing was conducted on July 23, 1979, and the matter was taken under advisement with leave to the parties to file additional memoranda until July 31, 1979. The Court withheld a ruling on the preliminary injunction but advanced the hearing on the merits to September 11, 1979.[2] Evidence received in the July hearing was admitted at the trial pursuant to Rule 65(a)(2), Federal Rules of Civil Procedure, to avoid unnecessary repetition. This opinion constitutes the Court's findings of fact and conclusions of law which form the basis for its decision in this case.

The defendant, City of Ocala, Florida, is a duly incorporated municipality, a political subdivision of the State of Florida. It is a home rule city under the Florida Constitution, having the governmental, corporate, and proprietary power, including the zoning power, to enable it to conduct municipal government except when expressly prohibited by law. Fla.Const. art. VIII § 2(b); Fla.Stat. § 166.042. The Ocala City Charter, enacted as Chapter 67–1782, Laws of Florida, provides that the city may zone lands within its corporate limits by regulation of buildings, density, location, and other purposes. Refusal to issue building per-

ry injunction by advancing trial on the merits to an early date on the court calendar. *See, e. g. Northwest Controls, Inc. v. Outboard Marine Corp.,* 317 F.Supp. 698, 703 (D.Del.1970). Further, the Court was reluctant to issue a mandatory injunction against a municipality in a case in which it maintained reservations concerning jurisdiction. "The mandatory injunction is so powerful a weapon, and so extremely difficult to wield, that one should only be granted under the strongest showing, both of necessity, and of likelihood of attaining results." *Harrison v. Otto G. Heinzeroth Mortgage Co.,* 430 F.Supp. 893, 897 (N.D.Ohio 1977). By moving directly to the merits, the Court sought to strike an acceptable balance between the concerns of both parties and, in effect, consolidated the issues in the trial on the merits on September 11, 1979.

mits is specifically provided as one method for enforcing compliance with its zoning regulations. § 1.06(30).

Pursuant to the foregoing authority, the City of Ocala adopted as one of its ordinances a Zoning Code. The Code requires that in certain circumstances a site development plan must be approved by the Ocala Planning and Zoning Commission before a building permit can be issued. It designates the procedure to be followed by the Planning and Zoning Commission where zoning regulations require consideration of a site development plan prior to the issuance of a building permit. Zoning Code § 22–8(20). The Code also provides the criteria to be considered by the Planning and Zoning Commission in determining whether to approve or disapprove a submitted site development plan. Zoning Code § 22–8(21). The criteria are contained in nine subparagraphs, (a) through (i). The following subparagraphs are pertinent to this case:

> [T]he planning and zoning commission shall follow the procedure set out in § 22–8(20) of the zoning regulations and shall be guided in its decision by the following standards and shall show in its record that each was considered where applicable:
>
>> (a) Ingress and egress to the property and proposed structures thereon, with particular reference to automotive and pedestrian safety, traffic flow and control, provision of services and servicing for utilities, and access in case of fire or catastrophe.
>>
>> * * * * * *
>>
>> (e) Off-street parking and loading areas, with attention to automotive and pedestrian safety, traffic flow and control, access in case of fire and catastrophe, and screening and landscaping.
>> (f) Recreation and open spaces, with attention to the location, size, and development of the areas as to adequacy, effect on private and nearby properties, and relationship to community-

wide open spaces and recreation facilities.

>> (g) Density and/or purpose of the development, with attention to its relationship to adjacent and nearby properties.
>> (h) General site arrangement, amenities, and convenience, with particular reference to insuring that appearance and general layout of the proposed development will be compatible and harmonious with the properties in the general area and will not be so at variance with other development in the area as to cause a substantial depreciation of such property values.

Zoning Code § 22–8(21) ¶ (a), (f)–(h).

If the Planning and Zoning Commission approves the site plan, the building permit issues as a matter of course. Zoning Code § 22–16. If the plan is disapproved, the owner has the option of modifying the site plan to meet the objections of the commission or of appealing the decision of the commission to the Ocala City Council. These provisions of the Zoning Code have been in effect and have remained unchanged at all times pertinent to this controversy.

Plaintiffs own property in the City of Ocala, Florida, situated in an area zoned R–3, a classification which provides for the construction of multi-family residences (Plaintiffs' Exhibit 2). The property is also located in the area designated as suitable for the development of federally assisted housing under the Ocala Housing Assistance Plan (Plaintiffs' Exhibit 1). Ocala zoning regulations, however, require approval of a site development plan before a building permit may be issued for multi-family residences in an R–3 zone. Zoning Schedule of District Regulations, p. 526.51. Some years prior to the present dispute, plaintiffs constructed an apartment complex on one half of the property. It provides housing assistance to qualified tenants through the rent payment assistance provisions of the U. S. Housing Act of 1937.[3]

---

**3.** Section 8 of the U. S. Housing Act of 1937 authorizes the Secretary of Housing and Urban Development to enter into contracts to make rent assistance payments to housing owners for the purpose of aiding lower-income families in obtaining a decent place to live and of pro-

That complex is called Hickory Ridge.[4] Plaintiffs now desire to build another apartment complex on the remaining property which they would call Hickory Knoll. The complex would be of the same approximate size as Hickory Ridge and would also qualify for federal financial assistance.

Plaintiffs' plans have been vigorously opposed by other property owners who reside in areas zoned R–1, adjacent to plaintiffs' property on the west and north sides.[5] The R–1 classification limits development of those areas to single-family residences. The Court heard testimony to the effect that the controversy spawned by plaintiffs' proposed project has been unique in the history of the Planning and Zoning Commission.

On October 11, 1977, plaintiffs applied to the Department of Housing and Urban Development (HUD) for site approval, a commitment for insurance of advances by the Federal Housing Authority (FHA),[6] and for Section 8 Housing Assistance.[7] The applications were reviewed by the Withlacoochee Regional Planning Council (WRPC), a body which acts in an advisory capacity as the clearing house on these and similar applications for federal assistance. Fla.Stat. § 160.02 (1977). The WRPC initially endorsed the project on the basis of a staff review conducted on plaintiffs' FHA application.[8] The evidence shows that some Ocala officials concurred in the endorsement.[9]

Some time prior to January 22, 1979, plaintiffs submitted their site development plan to the Ocala Planning and Zoning Commission. On January 22, 1979, a public hearing was held. The Court heard testimony to the effect that the commission's consideration in this instance was more detailed than in any previous hearing on similar subject matter. The minutes of that meeting indicate that the commission withheld approval of the site plan pending agreement by the plaintiffs to effect a number of modifications, the three most serious of which required (1) lowering the density of the project from 14.89 units per acre to 12.4 units per acre, (2) constructing a concrete block wall eight feet high along the north boundary and part of the west boundary of the property, and (3) redesigning the parking and recreational scheme (Plaintiffs' Exhibit 6). Another meeting was scheduled for February 12, 1979.

moting economically mixed housing. 42 U.S.C. § 1437f. See 24 C.F.R. § 880.101 et seq. (1978).

4. The construction of Hickory Ridge gave rise to a zoning dispute which eventually found its way into federal district court. The parties apparently settled their differences, however, because the case never reached judgment and was ultimately dismissed after a long continuance. *Cowart v. City of Ocala*, No. 72–4–Civ–Oc, Middle District of Florida, Ocala Division.

5. Plaintiffs' property is abutted on the south and east by R–3 property and on the west and north by R–1 property. See Plaintiffs' Exhibit 3, City of Ocala Zoning Map.

6. Section 8 of the U. S. Housing Act of 1937, concerning rent assistance payments, provides for the financing of construction with mortgages insured under the National Housing Act. 42 U.S.C. § 1437f(e)(3); National Housing Act of 1934, 12 U.S.C. § 1701 et seq.

7. Section 8 of the U. S. Housing Act of 1937, note 3, supra.

8. Letter from Jackson E. Sullivan, Executive Director, WRCP, to Mr. Walter J. Cowart and J. Edgar Cowart (December 21, 1977) (Plaintiffs' Exhibit 9). This endorsement was later withdrawn. See note 10, infra.

9. The Staff Statement of Review, dated December 9, 1977 (Plaintiffs' Exhibit 9) states in part:

Local review comments concerning the proposed project were solicited from the following:
Mr. Richard Lewis, Planning Director—City of Ocala
Mr. Lloyd Turner, Executive Director—Ocala Housing Authority
Mr. Murray Fugate, County Commissioner—Marion County Commission
Commissioner Fugate responded that his agency had no jurisdiction in the proposed project. Both Mr. Lewis and Mr. Turner provided favorable responses and indicated that the proposed project is consistent with local plans, programs and objectives. The comments of Mr. Lewis are attached.

At the February meeting of the commission, plaintiffs' agent submitted a written document indicating that all requested modifications had been or would be made except the three major modifications outlined above. The commission therefore disapproved the site development plan. On March 2, 1979, the WRPC also withdrew its endorsement of the project when a staff review disclosed that the Ocala City Council was unanimously opposed to the project and that the Planning and Zoning Commission had disapproved the site plan.[10]

On March 6, 1979, plaintiffs appealed the commission's decision to the Ocala City Council. At a public hearing on March 20, 1979, plaintiffs' counsel presented their argument for reversal of the commission's decision to deny the site plan. The council affirmed the decision of the commission, noting that plaintiffs had refused to make required modifications (Plaintiffs' Exhibit 5).

Despite the withdrawal of the WRPC endorsement, HUD issued plaintiffs a commitment on May 22, 1979, to make housing assistance payments with respect to 42 of the 114 units of the Hickory Knoll project. On June 21, 1979, plaintiffs filed this action alleging as damages and ground for injunction the loss on their investment resulting from delay and the probable loss of the HUD commitment and some or all of the funds expended to obtain it if the Court failed to enjoin the city from refusing to issue a building permit.

■ Plaintiffs do not challenge the constitutionality of the Ocala Zoning Code. They urge that it has been unconstitutionally applied by the Ocala Planning and Zoning Commission and the Ocala City Council members, resulting in a deprivation of

---

**10.** Letter from Jackson E. Sullivan, Executive Director, WRPC, to Mrs. Betty Johnson, President, Remsco, Inc., (March 2, 1979) (Plaintiffs' Exhibit 11). The Staff Statement of Review, dated March 1, 1979, attached to the letter states in part:

Local review comments concerning the proposed project were solicited from the following: Paul W. Tanner, Director—Ocala Housing Authority

Leroy Douglas, Chairman—Marion County Commission

Dave Donaldson, Representative—City of Ocala

J. Christian Meffert, Mayor—City of Ocala Richard K. Lewis, Director—Planning Department

W. Carleton Bliss, City Manager—City of Ocala Norris H. Goodwin, Public Works Director—City of Ocala

Comments were received from Mr. Lewis, Mr. Meffert, Mr. Tanner, and Mr. Donaldson. Mr. Tanner responded that the project is consistent with the local plans, programs, and objectives of his agency.

In his comments, Mr. Donaldson stated he felt that, "this development is not consistent with the surrounding neighborhood, that the area already has an abundance of this type of housing (conventional and subsidized apartments), and that additional units would serve only to aggravate the existing problems." He went on to say that the area is adjacent to upper middle income residential houses and problems have been encountered where residents from existing low income housing projects have trespassed and vandalized in the neighborhood.

Mr. Donaldson requested that the WRPC refuse to endorse the project.

Mr. Meffert forwarded a letter that he had sent to HUD, outlining the objections of the Ocala City Council to the Hickory Knolls project. This letter (attached to the review sheet) gave six objections to the project:

1. The project is incompatible with the needs, goals, and well being of the city.
2. The project provides for too intense a concentration of low-cost housing in Northeast Ocala.
3. The project fails to provide proper protection to adjacent properties.
4. There is a failure to provide protection to children from internal traffic from the apartments to the proposed pool.
5. The applicant has failed to comply with past commitments to the City.
6. The project would diminish the quality of life for adjacent property owners.

Mr. Lewis also responded by letter (attached). He found the project not to be consistent with local plans, programs, and objectives. In addition to citing the reasons listed by the City Council, Mr. Lewis outlined the three reasons the Planning and Zoning Commission rejected the site plan.

1. The proposed density is too high and should be reduced to 12.4 units per acre.
2. The site plan should be rearranged to provide for safer pedestrian traffic to and from the dwelling units and the recreation area.
3. to protect the single family subdivision to the North, an 8 foot high concrete block wall should be erected.

plaintiffs' property rights through a refusal to issue a building permit for the construction of Hickory Knoll. Plaintiffs attempt to demonstrate that the decision to disapprove plaintiffs' site plan, though facially appearing to have been made in accordance with zoning code criteria, was in fact motivated by impermissible prejudices on the part of council and commission members against the promoters of rent-subsidized housing and against the low-income families who would inhabit the rent-subsidized units of Hickory Knoll.[11] Further, plaintiffs urge that the instant discrimination is part of a continuing conspiracy to deprive plaintiffs of their property rights.[12] Plaintiffs urge the Court to conclude that the City of Ocala is liable in damages for violation of Due Process and Equal Protection and to enjoin the city from refusing to issue a building permit.

### Conclusions of Law

There is no doubt that a zoning decision affecting rights in property may be challenged as a deprivation of Due Process and Equal Protection under the Fourteenth Amendment. *See, e. g., Euclid v. Ambler Realty Co.,* 272 U.S. 365, 386, 47 S.Ct. 114, 71 L.Ed. 303 (1926). It also appears to be settled law that 42 U.S.C. § 1983 provides a cause of action, in law or in equity, not only for a deprivation of personal rights under color of state law, but also for deprivation of property rights. *Lynch v. Household Finance Corp.,* 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972); *Bunkley v. Watkins,* 567 F.2d 304 (5th Cir. 1978); *South Cutler Bay, Inc. v. Metropolitan Dade County, Florida,* 349 F.Supp. 1205 (S.D.Fla.1972). From the very beginning, however, review of local zoning decisions has been severely

limited, as is exemplified in the leading case of *Euclid v. Ambler Realty Co.,* in which the United States Supreme Court considered and rejected a property owner's Fourteenth Amendment challenge to the city's adoption of a comprehensive zoning plan. There, plaintiff alleged that the zoning ordinance would restrict his intended use of land for, among other things, the construction of apartment houses. After reviewing defendant's reasons for restricting the location of apartment houses, the Court concluded:

> If these reasons, thus summarized, do not demonstrate the wisdom or sound policy in all respects of those restrictions which we have indicated as pertinent to the inquiry, at least, the reasons are sufficiently cogent to preclude us from saying, as it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare.

*Euclid v. Ambler Realty Co., supra* at 395, 47 S.Ct. at 121.

This judicial deference applies even where the zoning decision at issue involves property reclassification under an existing plan rather than the adoption of a zoning ordinance. In *South Gwinett Venture v. Pruitt,* the Fifth Circuit Court of Appeals reversed the district court dismissal of a property owner's complaint brought under the Fourteenth Amendment, challenging the Gwinett County Commissioners' denial of an application for rezoning to permit construction of apartment houses. 482 F.2d 389 (5th Cir. 1973). On rehearing *en banc,*

---

**11.** Of course, plaintiffs lack standing to assert the rights or legal interests of third persons who are not parties to this suit. *Warth v. Seldin,* 422 U.S. 490, 498–502, 509–10, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

**12.** In support of the allegation of a continuing conspiracy, plaintiffs offer the record of previous litigation between plaintiffs and the City of Ocala spawned by the controversy over the Hickory Ridge project. See note 4, *supra.* In that case plaintiffs brought suit to enjoin the

city from revoking building permits and rezoning the intended site of Hickory Ridge to an R–1 classification. Only one public official involved in that dispute is still a member of the Planning and Zoning Commission, and the minutes of the hearings in the instant case reflect that he supported plaintiffs on several issues. The case ended in a settlement before judgment. The Court thus finds no merit in either plaintiffs' theory or the evidence.

with two judges dissenting,[13] the Court of Appeals affirmed the district court, holding that "local zoning is a quasi-legislative procedure, not subject to federal judicial consideration in the absence of arbitrary action,"[14] *South Gwinett Venture v. Pruitt,* 491 F.2d 5, 7 (5th Cir. 1974).

The case is also illustrative of the application of the standard of review. Plaintiff had alleged that the denial of the application was arbitrary because based on off-the-record information discussed between the county commissioners and other public officials. The court saw no constitutional significance in consultations between commissioners and other public officials where the commission had stated the reasons for its decision, which included inadequate facilities and adverse impact on existing residential areas. *Cf., Citizens Association of Georgetown, Inc. v. Zoning Commission of D. C.,* 155 U.S.App.D.C. 233, 477 F.2d 402, 407–09 (D.C. Cir. 1973) (required zoning commission to file a statement of reasons for zoning decision). Thus, allegations of arbitrariness were overcome by defendant's showing of reasonableness. *South Gwinett Venture v. Pruitt, supra* at 7.

The same standard has been applied in similar challenges to zoning decisions premised upon § 1983. In *Burns v. City of DesPeres,* the plaintiff property owner failed to support his allegations of an arbitrary and discriminatory refusal to rezone. Among other deficiencies, the evidence failed to demonstrate that all property in the immediate vicinity had been developed pursuant to the zoning classification which he desired for his property. 534 F.2d 103 (8th Cir. 1976). Affirming the district court's grant of judgment for defendants notwithstanding the verdict, the Eighth Circuit Court of Appeals also noted that defendants were entitled to consider the objections of property owners in the area in denying plaintiff's rezoning application. Significantly, the court stated:

> When an individual contends that a municipal commission has unconstitutionally applied a zoning ordinance to his property, courts are not entitled to review the evidence and reverse the commission merely because a contrary result may be permissible. Courts are not to assume the role of a "super zoning board." [citations omitted]. A decision not to rezone a particular tract is vested in the discretion of the proper municipal authorities and their legislative decisions are not to be subjected to court scrutiny to determine whether their refusal was expedient or provident. [citations omitted]. Our function in this type of case is to ascertain whether there has been a transgression upon the property owner's constitutional rights. [citations omitted]. In order to support his constitutional claims the plaintiff is required to prove that the defendants' actions were clearly arbitrary, unreasonable and discriminatory and bore no substantial relation to the health, safety, convenience and welfare of the community.

*Burns v. City of DesPeres, supra* at 108.

The foregoing summary of authorities is not intended to suggest that challenges to local zoning decisions have never been successful. Most successful actions, however, have been in the context of racial discrimination.[15] *See, e. g., Kennedy Park Homes*

---

**13.** Judge Wisdom and Judge Ingraham dissented. Both were members of the original panel.

**14.** The opinion of the Court en banc rejected by implication a distinction drawn by the original panel majority between adoption of a zoning plan and reclassification under that plan. The panel had characterized the former as a quasi-legislative act and the latter as quasi-judicial. 482 F.2d 389, 391 (5th Cir. 1973).

**15.** As the United States Supreme Court noted in *Arlington Heights v. Metropolitan Housing Corporation:*

> [I]t is because legislators and administrators are properly concerned with balancing numerous competing considerations that courts refrain from reviewing the merits of their decisions, absent a showing of arbitrariness or irrationality. But racial discrimination is *not just another competing consideration.* When there is proof that a discriminatory purpose has been a motivating factor in the decision, this judicial deference is no longer justified.

429 U.S. 252, 265–66, 97 S.Ct. 555, 563, 50 L.Ed.2d 450 (1976).

*Association, Inc. v. City of Lackawana, New York,* 436 F.2d 108 (2d Cir. 1970); *Crow v. Brown,* 332 F.Supp. 382 (N.D.Ga.1971); *Dailey v. City of Lawton, Oklahoma,* 296 F.Supp. 266 (W.D.Okla.1969). Apart from the racial context, the primary distinction between these cases and the instant case, however, is the sufficiency of the evidence.

Most notable is *Crow v. Brown* in which two actions premised upon 42 U.S.C. § 1983 and the Fourteenth Amendment were consolidated against county, city, and municipal housing authority officers for conduct alleged to have furthered the concentration of public housing for low-income black citizens in the City of Atlanta and prevented construction of such housing beyond the city limits. 332 F.Supp. 382 (N.D.Ga.1971) *aff'd* 457 F.2d 788 (5th Cir. 1972). One was an action brought by representatives of the affected class of low-income citizens.[16] The other was brought by property owners who had been denied building permits to construct apartment projects which they intended to sell to the Atlanta Housing Authority for use as public housing for low-income citizens. The property owner plaintiffs contended that the denial was for racial reasons and, therefore, violated the Equal Protection Clause. In support of that theory, plaintiffs produced evidence that the defendant county commission approved plaintiffs' application for rezoning in a public hearing, but, upon learning that the intended use of the property was for public housing instead of executive apartments, ordered the Planning Director and Director of Inspections and Licenses to refuse to issue building permits. The impermissible conduct was overt and the evidence explicit that the Commissioners had made an eleventh-hour attempt to dissolve their decision on rezoning. Judge Edenfield concluded:

> Although the Commissioners say they want only "nice" apartments at BoatRock and Red Oak it is clear that they are not talking about physical quality of the buildings.
>
> * * * * * *

It is also clear that they are not concerned with the physical location of the buildings. An aerial photograph of the BoatRock area shows it to be, for the most part, vacant rural land bounded on one side by an industrial development. The Commissioners testified that they were aware that most tenants of public housing are black, and the court is constrained to find that the only objection county authorities have to BoatRock and Red Oak is that the apartments would be occupied by low-income, black tenants. The official minutes of the meeting of the Commissioners, the correspondence between the parties, the letters denying the building permits, the memoranda of the county officials, and the testimony at trial all compel this conclusion.

* * * * * *

> [T]he evidence strongly suggests that the county's resort to such use of conditional zoning was a planned contrivance to be used in any situation which public housing was involved.

*Crow v. Brown, supra* at 389–90.

 A comparison of the evidence in *Crow v. Brown* with the evidence relied upon by plaintiffs in the instant case may be instructive. Plaintiffs first point to the fact that their property is located within an area classified R–3, which classification by definition allows multi-family residential development. Further, they note that their property is in a location designated as suitable for federally assisted housing under the Ocala Housing Assistance Plan (Plaintiffs' Exhibit 1). Plaintiffs urge that these facts are evidence of prior approval upon which plaintiffs relied and which have now been withdrawn by defendants' refusal to issue building permits. The deficiency in this evidence is that it fails to show any improper conduct by the defendants. An R–3 property classification does not guarantee the right to construct an apartment complex on the property. Under the provisions of the Zoning Code, as previously noted, approval of the site plan is the determi-

16. *Carr v. Brown,* No. 15203, 332 F.Supp. 382 (N.D.Ga.1971).

native step in obtaining a building permit. Similarly, the fact that the property is within one of the areas of the city designated as suitable for federally assisted housing does not mandate city approval of a specific project within the area, even though HUD approval has been obtained.[17] In the instant case, within the quadrant of the city which includes plaintiffs' property, there are other areas appropriately zoned for multi-family residential development. This is decidedly not a case in which defendant's denial of a building permit effectively prevents all development of federally assisted low-income housing within a designated area.

As further proof of prior approval, plaintiffs direct the Court's attention to a WRPC letter, dated December 21, 1977, which endorsed the Hickory Knoll project subsequent to a review of the project proposal in conjunction with plaintiffs' application for FHA insurance of advances (Plaintiff's Exhibit 9). The WRPC staff review which gave rise to this letter noted favorable comments by the Ocala Planning Director and Ocala Housing Authority Director in response to the WRPC's request for local review of the proposed project. Another WRPC letter, dated October 17, 1978, written subsequent to plaintiffs' application for a Section 8 Housing Assistance, requested plaintiff's full application in order to complete the WRPC review, noting unfavorable local comment on the project by the mayor and city council (Plaintiffs' Exhibit 10). Finally, a WRPC letter on March 2, 1979, withdrew the WRPC endorsement based upon the unanimous opposition of the city council and the disapproval of the site plan by the Planning and Zoning Commission (Plaintiffs' Exhibit 11). Noting that the only change in the Hickory Knoll project between December 21, 1977, and March 2, 1979, was their application for Section 8 Housing Assistance, plaintiffs ask the Court to infer a discriminatory purpose in defendant's refusal to issue a building permit for Hickory Knoll.

The Court is not persuaded that the city council's opposition to plaintiffs' application for Section 8 Housing Assistance, evidenced by the above letters and reports, constitutes ground for an inference of discriminatory animus or arbitrary and capricious decision-making with regard to the disapproval of plaintiffs' site plan. Plaintiffs' attempt to equate city council opposition to plaintiffs' application for federal assistance with the Planning and Zoning Commission's disapproval of plaintiffs' site plan is inappropriate. The considerations which form the basis for local comments regarding applications for federal assistance for proposed projects are not limited to the criteria specified in the Zoning Code. The Court finds that both official bodies were properly engaged in the performance of separate, lawful duties. Furthermore, in affirming the Planning and Zoning Commission disapproval, the city council did no more than find that the Planning and Zoning Commission complied with the requirements of the Zoning Code. In the face of plaintiffs' refusal to make required modifi-

17. In *Hills v. Gautreaux*, the United States Supreme Court has interpreted the pertinent federal statutes and regulations as follows:

·Regulations governing the § 8 program permit HUD to select "the geographic area or areas in which the housing is to be constructed," 24 C.F.R. § 880.203(b) (1975), and direct that sites be chosen to "promote greater choice of housing opportunities and avoid undue concentration of assisted persons in areas containing a high proportion of low-income persons." §§ 880.112(d), 883.209(a)(3). See §§ 880.112(b), (c), 883.209(a)(2), (b)(2). In most cases the Act grants the unit of local government in which the assistance is to be provided the right to comment on the application and, in certain specified circumstanc-

es, to preclude the Secretary of HUD from approving the application. See 42 U.S.C. §§ 1439(a)–(c) (1970 ed., Supp. IV). Use of the § 8 program to expand low-income housing opportunities outside areas of minority concentration would not have a coercive effect on suburban municipalities. For under the program, the local governmental units retain the right to comment on specific assistance proposals, to reject certain proposals that are inconsistent with their approved housing-assistance plans, and to require that zoning and other land-use restrictions be adhered to by builders.
425 U.S. 284, 304–05, 96 S.Ct. 1538, 1549–1550, 47 L.Ed.2d 792 (1975).

cations, the city council reached the only reasonable conclusion.

Focusing upon the deliberations and decisions of the Planning and Zoning Commission, plaintiffs urge the Court to find that the Hickory Knoll project was singled out from other apartment projects for inquisitorial examination in a manner that can only suggest some ulterior motive. As previously noted, this project did receive unusually rigorous consideration. Such detailed examination, however, is entirely understandable in light of the intense public interest in this project. Further, the minutes reveal that the scope of the deliberation did not exceed the boundaries of the Zoning Code criteria (Plaintiffs' Exhibit 6).

Finally, plaintiffs contend that the three major modifications which the Planning and Zoning Commission required as prerequisites for approval of the project were imposed to defeat rather than improve the Hickory Knoll project. In support of this argument, plaintiffs demonstrated (1) that an eight foot high cement block wall had never been used before (except in a commercial setting) as a buffer between differently zoned properties in Ocala, (2) that the proposed density of 14.85 units per acre was substantially less dense than at least two other apartment complexes in the same general area of Ocala, and (3) that in years past defendants had permitted construction of other apartments in Ocala with the centrally-located parking and recreational facilities similar to the design which was rejected by the commission in the Hickory Knoll site plan. Further, plaintiffs contend that the apartments will no longer be economically feasible if they are required to implement the modifications.

As should be clear from the previous discussion of the law, defendants, for their part, are not required to prove that these modifications are the wisest and best available courses of action. They need only show that the imposition of these requirements bears a "substantial relation to the public health, safety, morals, or general welfare." *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395, 47 S.Ct. 114, 121, 71 L.Ed. 303

(1926). In the instant case, the subject matter of each modification is reflected in the criteria for consideration of the site plan required by the Zoning Code. Further, recognizing that special problems sometimes call for special solutions, the Court is constrained to find from the minutes of the Commission and the testimony of its individual members that each modification bears a reasonable relationship to permissible goals.

The Court does not agree that a particular course of action can be precluded solely because it has never before been applied. Defendants have satisfactorily demonstrated the reasonableness of the modifications imposed upon plaintiffs in this instance. The cement block wall is, first of all, capable of providing a visual buffer and a substantial physical barrier between the R–1 and R–3 properties. It is less subject to deterioration and vandalism than other fence-type buffers and is a substantial deterrent to trespass. Second, the decrease in density recommended by the Commission requires only that Hickory Knoll density be reduced to that of the neighboring Hickory Ridge apartments. The redesign and separation of the recreation and parking areas is certainly the most serious and costly modification demanded by the commission. The modification is intended to avoid the potential danger to children and other pedestrians posed by a design which necessitates, or at least encourages, crossing the parking lot in order to reach the swimming pool and recreation area. There is evidence to show that locating the swimming pool and recreational facilities in the middle of the complex, encircled by automobile parking spaces, is a common design. The Court, however, can neither rule out the possibility of danger nor conclude that redesign, though never before required, is not a reasonable means to alleviate this problem bearing on public safety. In short, defendant has demonstrated to the satisfaction of this Court the reasonableness of the modifications. Further, defendant's counsel has represented to this Court that building permits will be issued to plaintiffs as a matter

of course upon their agreement to comply with the modifications.

The Court's conclusion that defendant must prevail in this action is further buttressed by the fact that plaintiffs have not produced any direct evidence of discrimination on the part of defendant, in spite of the fact that practically every member of the city council and the Planning and Zoning Commission has been examined in this action by deposition and in court. The Court placed no limitations on plaintiffs' inquiry. While the Court agrees that "most persons will not admit that they entertain any bias or prejudice," *United States v. Real Estate Development Corp.*, 347 F.Supp. 776 (N.D.Miss.1972) *quoting Dailey v. City of Lawton*, 296 F.Supp. 266 at 268 (W.D.Okla.1969) *aff'd* 425 F.2d 1037 (10th Cir. 1970), the other evidence offered by plaintiffs is simply insufficient to support an inference of discrimination.

In consideration of the foregoing, the Court holds that plaintiffs have failed to prove that defendant's denial of the building permit was clearly arbitrary and unreasonable and without substantial relation to the public health, safety, morals, or general welfare. Defendant is therefore entitled to judgment.

FINAL JUDGMENT

This action came on for trial before the Court, Honorable Charles R. Scott, District Judge, presiding, and the issues having been duly tried and a decision having been duly rendered,

It is ORDERED and ADJUDGED:

1. That the petition of plaintiffs J. Edgar Cowart and Walter J. Cowart for mandatory injunction is denied.

2. That plaintiffs J. Edgar Cowart and Walter J. Cowart take nothing, that the action be dismissed on the merits, and that defendant City of Ocala, Florida, recover of the plaintiffs J. Edgar Cowart and Walter J. Cowart its costs of action.