CAPITAL PROPERTIES, INC., Plaintiff,

v.

The ZONING COMMISSION OF the DIS-
TRICT OF COLUMBIA et al.,
Defendants.

Civ. A. No. 1615–61.

United States District Court
District of Columbia.

May 1, 1964.

———◆———

Walter J. Bonner, Washington, D. C.,
for plaintiff.

George H. Clark and James Cashman,
Assts. Corp. Counsel, Washington, D. C.,
for defendants.

HOLTZOFF, District Judge.

This is an action by a property owner
against the members of the Zoning Com-
mission of the District of Columbia to
review and set aside a decision of the
Commission, which denied an application
for the rezoning of certain real property
owned by the plaintiff in the city of
Washington. Specifically, the plaintiff is
the owner of a vacant lot on the south
side of the 100 block of D Street, North-
east. That area is at this time zoned in
a classification known as C–2, which is
one of the sub-classes of commercial
districts. The applicant sought a rezon-
ing of his property to a class known as
C–3–B. The applicant's purpose is to
erect an office building on its property.
The regulations permit the erection of a

taller building and a building that may occupy a larger percentage of the land area in class or zone C–3–B than in zone C–2.

The function of adopting and promulgating zoning regulations is vested by the District of Columbia Code of Laws in a body known as the Zoning Commission, which is composed of a number of high ranking officers of the District of Columbia Government and of the Federal Government, among them, the District Commissioners, the Director of the National Park Service, and the Architect of the Capitol. The Commission has a fulltime, permanent staff to assist it, District of Columbia Code, Title 5, Section 412. The duties of the Commission are defined in Title 5, Section 413 as follows:

"To promote the health, safety, morals, convenience, order, prosperity, or general welfare of the District of Columbia and its planning and orderly development as the national capital, the Zoning Commission * * * is hereby empowered, * * * to regulate the location, height, bulk, number of stories and size of buildings and other structures, the percentage of lot which may be occupied, the sizes of yards, courts and other open spaces, the density of population, and the uses of buildings, structures, and land for trade, industry, residence, recreation, public activities, or other purposes; and for the purpose of such regulation said commission may divide the District of Columbia into districts or zones of such number, shape, and area as said Zoning Commission may determine, * * *."

In addition to the Zoning Commission, there is a Board of Zoning Adjustment, the function of which is, under certain limitations, to grant exceptions or variances in cases of hardship, as defined in the statute. District of Columbia Code, Title 5, Section 420.

The system of zoning was instituted in the District of Columbia in 1920. In 1958 the system was revamped by the adoption of a new zoning map for the entire city and a new and revised body of regulations. These regulations, with some amendments, are now in effect. Under these regulations the entire city is divided into several groups of zones; residential districts, business districts, industrial districts, and districts designed for special uses. Each of these classes is subdivided into districts of various types.

We are dealing here with business districts. The downtown core area of the city comprising the retail and office centers is known as C–4. It is surrounded by a group of districts known as C–3, consisting of C–3–A and C–3–B, for the purpose of accommodating important subcenters supplementary to the central business district. Beyond them are C–2 districts, sometimes referred to as community business centers, which are interspersed in different residential sections in order to provide facilities for shopping and business needs for large segments of the city outside of the central core.

As already indicated, the property involved in this case is located in a C–2 district and the applicant is requesting that it be rezoned or transferred to C–3–B. Districts of both types permit the construction of office buildings. However, in a C–2 district a building may not be erected that is higher than 60 feet, while a height limit of 90 feet is permitted in a C–3–B district. So, too, in a C–2 district only 60 per cent of the lot may be occupied by the structure, whereas in a C–3–B district lot occupancy of 75 per cent is permitted. It is the desire of the plaintiff to build an office building of the larger type and the application for rezoning is intended for that purpose. Its contention is that the construction and operation of an office building of the larger kind would be much more profitable than the construction and operation of a building of the smaller type that is permitted under present zoning.

■ The scope of judicial review of actions of the Zoning Commission is very narrow. This Court had occasion to discuss the subject with some degree of particularity in American University v. Prentiss, D.C., 113 F.Supp. 389, affirmed 94 U.S.App.D.C. 204, 214 F.2d 282. In that case it was stated, p. 394, of 113 F.Supp., that:

"The only matter that the court may consider is whether the zoning order is unconstitutional, as constituting a taking of property without due process of law."

And, again, it was stated:

"The action of zoning authorities is not to be held invalid unless the court is convinced that it is clearly arbitrary and unreasonable, having no substantial relation to the public safety, health, or morals, or the general welfare."

In this connection it should be emphasized that the statute, as has been stated heretofore, does not limit the power of the District of Columbia Zoning Commission to the promotion of health, safety or morals of the District of Columbia. It extends also to convenience, order, prosperity and the general welfare as well as the planning and orderly development of Washington as a National Capital. The Court may not substitute itself for the Zoning Commission. It may not set aside the action of the Commission merely because it might have decided the other way if the Court had been a member of the Commission.

■ It is claimed in behalf of the plaintiff, and the claim is supported by impressive expert testimony, that it was a mistake in 1958 to include the south side of D Street in a C–2 district and that the western boundary of the C–2 district should have been Second Street, Northeast. This contention obviously, however, involves a matter of opinion. The power to make the determination, and it is a discretionary power, was reposed and vested by the Congress in the Zoning Commission and the Commission in the exercise of a sound discretion included that block as part of the C–2 district, which extends easterly for a number of blocks as far as a small park known as Stanton Square. It might be stated that the block involved in this case adjoins and is on the edge of the Capitol Hill area. The western boundary of the C–2 district is at First Street, Northeast.

It is claimed further, with some degree of cogency, that there has been such a change in the character of the neighborhood that the lot here in question, and for that matter the entire south side of D Street in the 100 block Northeast, should be transferred from C–2 to C–3–B. It was shown and not denied that the Government has acquired by eminent domain or by purchase a considerable number of residential properties in the immediate area, has demolished the buildings and is using these areas for parking lots, either directly or through leases, and that consequently there is not an immediate residential area to be served by a C–2 zone. On the other hand, it may be argued that, by the same token, there is no reasonable basis for according a C–3–B classification to this block because it is outside of the general area of C–3–B districts that surround the downtown core. In any event, this is a matter of discretion for the Zoning Commission. It involves a question of degree, and such matters are not to be determined by the courts but, rather, by the Commission, unless its determination reaches a point at which it is arbitrary and capricious.

■ Evidence was introduced in behalf of the plaintiff that if the plaintiff were permitted to erect an office building of the type that it contemplates, its income over a period of 20 years would be vastly greater than the income that it could possibly derive from the building of the smaller type that is permitted by the present zoning. First, it must be said that a 20 year prophesy as to possible income is not a sufficient basis for a finding of fact, to say the least. While our tendency is to be optimistic in most things, we must take into consideration

the imponderables and the unforeseen circumstances. Costs of construction may turn out to be much greater than expected; there may be such an over-building that office space might become difficult to rent and office rents might come down; costs of operation might be increased, and that is not impossible; a large tenant might become insolvent and there might be a financial loss. Obviously it is impossible to predicate a definitive finding as to the likelihood of profitable operations over a long period of years, on such a speculative basis.

But beyond that, even if the Court were to accept the optimistic predictions of the plaintiff's expert in this respect, it must be borne in mind that the very purpose of modern city zoning is to limit and direct uses of properties, and such limitations and restrictions may at times cause a reduction of income from a particular piece of property. Until zoning was introduced, which is a modern innovation, cities grew without any plan, without any rhyme or reason, very much to the detriment of the population as well as the property owners.

■■ The Court is, therefore, of the opinion that the Zoning Commission has not exceeded the scope of a sound discretion in declining to rezone this property as requested. In this connection it must be noted that the purpose of zoning is to create districts, large or small, and not to zone or rezone specific pieces of property. Whether an exception should be granted to a particular piece of property is a matter within the jurisdiction of the Board of Zoning Adjustment, which of course is subject to certain limitations.

■ There is one other point that must be discussed. The statute requires the Zoning Commission to act in accordance with a comprehensive plan, D.C. Code, Sec. 5–414. It is claimed in behalf of the plaintiffs that the Commission has never adopted a comprehensive plan, that, therefore, there is no foundation

for the regulations, and that consequently the regulations are invalid. The Court has considerable doubt whether a litigant has a right, first, to claim relief under the regulations and then to assert that they are invalid. But assuming *arguendo*, without deciding, that a litigant may do so, the Court is of the opinion that the contention is not well founded on its merits. It is apparently based on the thought that the Commission was required to take two separate steps in chronological order: first, to design a comprehensive plan; and, second, having done so, to promulgate regulations. This is a misconception. The adoption of a comprehensive plan and the promulgation of the regulations, accompanied by a city-wide map, as has been done here, may all be a single act. All that requirement seems to mean is that the entire city must be zoned on a comprehensive basis and that the Commission may not zone just a part of the city and leave the balance without any regulations.

This view has been adopted in other jurisdictions. In Clark v. Town Council of Town of West Hartford, 145 Conn. 476, 144 A.2d 327, 333, decided by the highest court of Connecticut, it was stated that the comprehensive plan "may be found in the scheme of the zoning regulations themselves." A similar view was expressed by the highest court of New Jersey in Ward v. Montgomery Township, 28 N.J. 529, 147 A.2d 248, 252.

The Court reaches the conclusion, therefore, that the requirement of the adoption of a comprehensive plan has been substantially complied with.

In the light of the considerations here discussed the Court is of the opinion that the plaintiff is not entitled to recover.

Judgment will be entered on the merits in favor of the defendants dismissing the complaint.

A transcript of this oral decision will constitute the findings of fact and the conclusions of law. Counsel may submit a proposed judgment.